UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| BRIAN PIERCE, individually and for all others similarly situated, | Case No. 4:18-cv-1803 |
| v. | FLSA Collective Action |
| APACHE CORPORATION | Jury Demanded |

# ORIGINAL COMPLAINT

**SUMMARY**

1.  Brian Pierce brings this lawsuit to recover unpaid overtime wages and other damages owed under the Fair Labor Standards Act (FLSA).

2.  Apache Corporation is a global oil and gas exploration and production company operating worldwide and throughout the United States, including in Texas.[1]

3.  Apache employs oilfield personnel, like Pierce, to carry out its work.

4.  Pierce, and other workers like him, were typically scheduled for 12+ hour shifts, 7 days a week, for weeks at a time.

5.  But Apache did not pay Pierce or the other workers like him overtime.

6.  Instead of paying overtime as required by the FLSA, Apache paid these workers a day-rate and improperly classified them as independent contractors.

7.  This collective action seeks to recover the unpaid overtime wages and other damages owed to these workers.

---

[1] http://www.apachecorp.com/

**JURISDICTION AND VENUE**

8. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action involves a federal question under the FLSA. 29 U.S.C. § 216(b).

9. Venue is proper pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claim occurred in this District.

**THE PARTIES**

10. From approximately January until December 2017, Pierce worked exclusively for Apache as a safety consultant.

11. Throughout his employment with Apache, he was paid a day-rate with no overtime compensation and was misclassified as an independent contractor.

12. His consent to be a party plaintiff is attached as Exhibit A.

13. Pierce brings this action on behalf of himself and all other similarly situated workers who were classified as independent contractors and paid according to Apache's day-rate system.

14. Apache paid each of these workers a flat amount for each day worked and failed to pay them overtime for hours worked in excess of 40 hours in a workweek.

15. The class of similarly situated employees sought to be certified as a collective action is defined as:

> **All safety consultants who worked for Apache during the past 3 years who were classified as independent contractors and paid a day-rate with no overtime (the "Day Rate Workers").**

16. Pierce seeks conditional and final certification of this FLSA collective action under 29 U.S.C. § 216(b).

17. Defendant, **Apache Corporation,** may be served by serving its registered agent for service of process, **CT Corporation System, 1999 Bryan St., Suite 900, Dallas, Texas 75201.**

**COVERAGE UNDER THE FLSA**

18. Founded in 1954, Apache is a multi-billion-dollar oil and gas company with operations in different countries around the world and in multiple states in this country.

19. In 2017 alone, its revenues exceeded $5 billion.

20. In 2016, Apache's revenues exceeded $5 billion.

21. In 2015, Apache's revenues exceeded $5 billion.[2]

22. For at least the past decade, Apache has consistently employed hundreds of workers in the United States.

23. Apache's workers handled, sold, and/or worked on goods or materials that moved in or were produced for commerce by any person.

24. For example, Apache's workers use wrenches, hammers, screw drivers, cell phones, automobiles, computers, steel toe boots, and fire retardant clothing in performing their work.

25. Apache is an enterprise engaged in commerce within the meaning of the FLSA.

26. In assisting with the production of oil and gas, Pierce and the Day Rate Workers engaged in commerce or in the production of goods for commerce.

27. Apache treated Pierce and the Day Rate Workers as employees and dictated the pay practices Pierce and the Day Rate Workers were subjected to.

28. Apache's misclassification of Pierce and the Day Rate Workers as independent contractors does not alter its status as their employer for purposes of the FLSA.

---

[2] *See, e.g.,* Apache Corp., 2015 Annual Report (Form 10-K) (April 20, 2016), available at http://investor.apachecorp.com/financials.cfm.

## FACTS

29. Apache is a large oil and gas company.

30. It operates globally, throughout the United States, and in Texas.

31. In order to amke the goods and provide the services it markets to its customers, Apache employs oilfield personnel like Pierce and the Day Rate Workers.

32. These oilfield workers carry out the hands-on, day-to-day production work of Apache.

33. Apache paid Pierce and the Day Rate Workers a flat sum for each day worked, regardless of the number of hours that they worked that day (or in that workweek).

34. Apache failed to pay Pierce and the Day Rate Workers overtime for hours that they worked in excess of 40 hours in a workweek.

35. For example, Pierce worked exclusively for Apache from approximately January until December 2017 as a safety consultant.



36. Pierce was paid on a day-rate basis.

37. Apache typically scheduled Pierce to work 12-hour shifts, for as many as 7 days a week.

38. Because Apache regularly scheduled Pierce for as many as 84 hours in a week, Apache knew Pierce regularly worked more than 40 hours in a workweek.

39. But Apache did not pay Pierce overtime.

40. The work Pierce performed was an essential part of producing Apache's core products and/or services.

41. During Pierce's employment with Apache, Apache exercised control (directly or jointly through another company) over all aspects of his job.

4

42. Pierce did not make any substantial investment in order to perform the work Apache required of him.

43. Apache determined Pierce's opportunity for "profit."

44. Because Pierce received a daily rate for every day worked, Pierce could not experience a "loss" in the sense relevant to determining whether someone is an employee under the FLSA.

45. Pierce's earnings were controlled by Apache through the number of days it scheduled him to work.

46. Pierce was not required to possess any unique or specialized skillset (other than that maintained by all other individuals working in the same job position) to perform his job duties.

47. Pierce performed routine manual and technical job duties that were largely dictated by Apache.

48. Pierce worked exclusively for Apache while being misclassified as an independent contractor from approximately January to December 2017.

49. Pierce was not employed by Apache on a project-by-project basis, but rather on a consistent basis.

50. While Pierce was classified as an independent contractor, he was regularly on call for Apache.

51. Apache required Pierce to drop everything and work whenever needed.

52. Apache, individually and/or jointly with a company it contracted with, controlled all the significant or meaningful aspects of the job duties performed by Pierce.

53. Apache controlled the hours and locations Pierce worked, the tools he used, and the rates of pay he received.

54. Even when Pierce worked away from Apache's offices without the presence of a direct Apache supervisor, Apache still controlled all aspects of Pierce's job activities by enforcing mandatory compliance with policies and procedures.

55. Pierce used equipment provided by Apache to perform his job duties.

56. Pierce did not provide the equipment he worked with on a daily basis.

57. Apache made the large capital investments in buildings, machines, equipment, tools, personnel, and supplies in the business that Pierce worked in.

58. Pierce did not incur operating expenses like rent, payroll, marketing, and insurance.

59. Pierce was economically dependent on Apache during his employment.

60. Apache set Pierce's rates of pay, his work schedule, and prohibited his (formally or practically) from working other jobs for other companies while he was working on jobs for Apache.

61. Pierce's working relationship with Apache was similar to that of the other day rate workers.

62. Very little skill, training, or initiative (in the relevant sense of "business initiative") was required of Pierce and the Day Rate Workers to perform their job duties.

63. Indeed, the daily and weekly activities of Pierce and the Day Rate Workers were routine and largely governed by standardized plans, procedures, and checklists created or mandated by Apache.

64. Virtually every job function performed by Pierce and the Day Rate Workers was pre-determined by Apache and/or its clients, including the tools to use at a job site, the data to compile, the schedule of work, and related work duties.

65. Pierce and the Day Rate Workers were generally prohibited from varying their job duties outside of the pre-determined parameters.

66. Finally, for the purposes of an FLSA overtime claim, Pierce and the Day Rate Workers performed substantially similar job duties related to oil and gas operations in the field.

67. All of the Day Rate Workers perform the similar job duties and are subjected to the similar policies and procedures which dictate the day-to-day activities performed by each person.

68. The Day Rate Workers also worked similar hours and were denied overtime as a result of the same illegal pay practice.

69. The Day Rate Workers regularly worked in excess of 40 hours each week.

70. Like Pierce, the Day Rate Workers were generally scheduled for daily shifts of 12 (or more) hours for weeks at a time.

71. Apache did not pay Pierce on a salary basis.

72. Apache did not pay the Day Rate Workers on a salary basis.

73. Apache paid Pierce on a day-rate basis.

74. Apache paid the Day Rate Workers on a day-rate basis.

75. Apache failed to pay Pierce overtime for hours worked in excess of 40 hours in a single workweek.

76. Apache failed to pay the Day Rate Workers overtime for hours worked in excess of 40 hours in a single workweek.

77. Apache knew, or acted with reckless disregard for whether, Pierce and the Day Rate Workers were misclassified as independent contractors.

78. Apache classifies other workers who perform substantially similar work, under similar conditions, as employees.

79. For example, Apache classifies one or more of its safety consultants as an "employee" for the purposes of withholding employment taxes.

80. Apache classifies one or more of its safety consultants as an "employee" for the purposes of its ERISA benefit plans.

81. Apache's policy of failing to pay Pierce and the Day Rate Workers overtime violates the FLSA because these workers are employees.

82. Apache's day-rate system violates the FLSA because Pierce and the Day Rate Workers did not receive overtime pay for hours worked over 40 hours each week.

83. Because Pierce and the Day Rate Workers were misclassified as independent contractors by Apache, they should receive overtime for all hours worked in excess of 40 hours in each workweek.

**FLSA VIOLATIONS**

84. Apache violated, and is violating, the FLSA by employing Pierce and the Day Rate Workers for workweeks longer than 40 hours without paying them overtime.

85. Apache knowingly, willfully, or in reckless disregard carried out this illegal pattern or practice of failing to pay Pierce and the Day Rate Workers overtime.

86. Apache's failure to pay overtime to Pierce and the Day Rate Workers was not reasonable, nor was the decision not to pay overtime made in good faith.

87. Accordingly, Pierces and the Day Rate Workers are entitled to overtime under the FLSA, liquidated damages, attorneys' fees and costs.

**COLLECTIVE ACTION ALLEGATIONS**

88. The illegal pay practice Apache imposed on Pierce were likewise imposed on the Day Rate Workers.

89. Numerous individuals were victimized by this pattern, practice, and policy which is in willful violation of the FLSA.

90. Numerous other individuals who worked with Pierce were classified as independent contractors, paid in the same manner, performed similar work, and were not properly compensated for all hours worked as required by applicable law.

91. Based on his experiences and tenure with Apache, Pierce are aware that Apache's illegal practices were imposed on other Day Rate Workers.

92. The Day Rate Workers were improperly classified as independent contractors and not paid overtime when they worked in excess of 40 hours per week.

93. Apache's failure to pay overtime at the rates required federal law result from generally applicable, systematic policies, and practices which are not dependent on the personal circumstances of the Day Rate Workers.

94. Pierce's experiences are therefore typical of the experiences of the Day Rate Workers.

95. The specific job titles or precise job locations of the various members of the Day Rate Workers do not prevent collective treatment.

96. Pierce has no interests contrary to, or in conflict with, the Day Rate Workers.

**JURY DEMAND**

97. Pierce demands a trial by jury.

**RELIEF SOUGHT**

98. WHEREFORE, Pierce prays for judgment against Apache as follows:

   a. An Order permitting the issuance of a court authorized notice to all similarly situated individuals notifying them of their rights under the FLSA;

   b. For an Order finding Apache liable for unpaid overtime owed under the FLSA, as well as liquidated damages in an amount equal to the unpaid compensation;

   c. For an Order awarding attorneys' fees, costs and pre- and post-judgment interest at the highest available rates; and

d.  For an Order granting such other and further relief as may be necessary and appropriate.

Respectfully submitted,

**BRUCKNER BURCH PLLC**

By: ***/s/ Rex Burch***
_____
Richard J. (Rex) Burch
Texas Bar No. 24001807
S.D. Tex. Id. No. 21615
8 Greenway Plaza, Suite 1500
Houston, Texas 77046
Telephone: (713) 877-8788
Telecopier: (713) 877-8065
rburch@brucknerburch.com

Michael A. Josephson
Texas Bar No. 24014780
S.D. Tex. Id. No. 27157
**JOSEPHSON DUNLAP LAW FIRM**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
Telephone: (713) 352-1100
Telecopier: (713) 352-3300
mjosephson@mybackwages.com

**Attorneys for Plaintiffs**

## CONSENT TO JOIN WAGE CLAIM

Print Name: Brian S Pierce

1. I hereby consent to participate in a collective action lawsuit against Apache to pursue my claims of unpaid overtime during the time that I worked with the company.

2. I understand that this lawsuit is brought under the Fair Labor Standards Act, and consent to be bound by the Court's decision.

3. I designate the law firm and attorneys at JOSEPHSON DUNLAP as my attorneys to prosecute my wage claims.

4. I authorize the law firm and attorneys at JOSEPHSON DUNLAP to use this consent to file my claim in a separate lawsuit, class/collective action, or arbitration against the company.

Signature: Brian S Pierce (Mar 1, 2018)